IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHRISTOPHER McDONALD,          )
                                       )
        Petitioner,           )
                                       )
     v.                      )      No. 05 C 820
                                       )
TERRY McCANN,               )
                                       )
        Respondent.      )

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

For the reasons set forth below, Christopher McDonald's ("McDonald") Petition for Writ

of Habeas Corpus is denied.

BACKGROUND

The following background information is repeated as set forth by the Appellate Court of

Illinois:[1]

> On February 9, 1999, John Gholston was driving a stolen car with three passengers,
> Derrick Gholston, Lucias Byes and Courtney Ward. As [John] Gholston parked the
> car, defendant [McDonald] came up to the vehicle, and an argument ensued. When
> John Gholston got out of the car, defendant shot him; defendant then shot inside the
> car wounding Derrick Gholston and Lucias Byes. Courtney Ward escaped from the
> vehicle without injury. John Gholston died as a result of the shooting.
>
> After defendant was indicted, the State petitioned the court for material witness
> bonds for Byes, Ward and Raymond Keyes, a potential witness to an inculpatory
> statement that defendant purportedly made. Each petition alleged that the witness
> feared for his safety because Derrick Gholston had been shot and killed on February
> 20, 1999. Byes' petition also alleged that he planned on leaving the Joliet area.

---

[1] On habeas review, the state court's factual findings are presumed to be correct, absent
clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1).

> Neither defendant nor counsel received copies of the petitions or notice of the hearings on the material witness bonds, and neither was present at the hearings. Defendant's counsel later found out about the hearings and filed a motion to dismiss the indictment, which the court denied.

*People v. McDonald*, 749 N.E.2d 1066, 1068 (Ill. App. Ct. 3d Dist. 2001). Following a jury trial in state court, McDonald was convicted of first degree murder, two counts of aggravated battery with a firearm, aggravated discharge of a firearm, and unlawful use of a weapon by a felon. On November 15, 1999, McDonald was sentenced to 30-, 10-, 10-, 10- and 5-year terms of imprisonment, respectively. The two 10-year sentences for aggravated battery with a firearm are to be served consecutively to each other and to the 30-year murder sentence, while the remaining terms are to be served concurrently.

McDonald appealed his convictions and sentences, arguing that his due process rights were violated when the court conducted *ex parte* hearings on the material witness bonds, that the trial court committed plain error when it denied his motion for a mistrial after the government improperly introduced "bloodhound" evidence at trial, and that the trial court failed to properly consider mitigating factors in sentencing McDonald. In a published opinion on May 16 , 2001, the Appellate Court of Illinois affirmed McDonald's convictions and sentences. The Supreme Court of Illinois denied McDonald leave to appeal this decision.

McDonald then filed his first *pro se* post-conviction petition, arguing among other things that he was denied the effective assistance of counsel when his trial lawyer failed to advise him that (1) McDonald would be required to serve 100% of his sentence if he was convicted of first degree murder and (2) the sentences for aggravated battery with a firearm would be served consecutive to each other and also consecutive to the murder sentence. McDonald argued that the omission of this information impaired his ability to knowingly decline the tender of a jury

instruction on second degree murder. The trial court summarily denied McDonald's petition as "frivolous or patently without merit" on August 1, 2002. (Dkt. No. 33, Ex. H.) The Appellate Court of Illinois affirmed the dismissal of McDonald's first post-conviction petition in an unpublished order on August 29, 2003, and the Supreme Court of Illinois again denied leave to appeal.

On July 26, 2004, McDonald filed a second post-conviction petition, again *pro se*, arguing that his due process rights were violated when he was forced to appear before the jury in leg shackles with no individualized finding by the trial court that shackles were warranted in his case. McDonald also argued that his counsel was ineffective for failing to object to this due process violation. McDonald's second post-conviction petition was summarily dismissed by the trial court on September 15, 2004.

On October 6, 2004 McDonald filed a motion to reconsider the September 15, 2004 order and thereafter filed an amended second petition for post-conviction relief. In his amended second post-conviction petition, McDonald argued that he had cause to file a successive post-conviction petition because his appellate counsel had not known that McDonald was shackled at trial (the fact that he was shackled was not reflected in the record) and McDonald himself only became aware of the constitutional violation upon reading *People v. Doss*, 807 N.E.2d 697 (Ill. App. Ct. 3d Dist. 2004) and *People v. Martinez* 808 N.E.2d 1089 (Ill. App. Ct. 3d Dist. 2004). McDonald further argued that he was prejudiced because he was made to appear on the witness stand in shackles and was unable to adequately assist his counsel in demonstrating the basis for

McDonald's self-defense claim,[2] because he "could only make hand gestures" in describing how he was attacked. (Dkt. No. 33, Ex. P.) On December 20, 2004, the trial court denied McDonald's motion to reconsider and summarily dismissed McDonald's amended second post-conviction petition.

McDonald appealed the trial court's dismissal of his second post-conviction petition and his amended second post-conviction petition, as well the denial of his motion to reconsider, arguing that the trial court erred in dismissing his *pro se* petitions when they set forth the gist of a constitutional claim. In a published opinion on February 16, 2006, the Appellate Court of Illinois affirmed the judgment of the trial court. Once again, the Supreme Court of Illinois denied leave to appeal.

Now pending before this court is McDonald's petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254.

LEGAL STANDARD

Federal habeas review of McDonald's convictions is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the AEDPA, relief may be granted only if the state court's final decision on the merits of the petitioner's federal claims was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

---

[2] McDonald testified that he acted in self-defense when John Gholston tried to rob him and someone inside the vehicle pointed a gun at him. (Dkt. No. 33, Ex. B at 13.)

4

A decision is "contrary to" clearly established federal law if "the state court reached a result opposite to that reached by the Supreme Court on materially indistinguishable facts." *Virsnieks v. Smith*, 521 F.3d 707, 713 (7th Cir. 2008) (citing *Williams v. Taylor*, 529 U.S. 362, 405 (2000) and *Jackson v. Miller*, 260 F.3d 769, 774 (7th Cir. 2001)).  A state court decision will not be found contrary to federal law merely because it does not rely on or refer to Supreme Court precedent.  *Daniels v. Knight*, 476 F.3d 426, 434 (7th Cir. 2007).

In cases where there is no Supreme Court precedent directly on point, an unreasonable application of federal law occurs "when the state court correctly identifies the governing legal rule but applies it unreasonably to the facts."  *Badelle v. Correll*, 452 F.3d 648, 654 (7th Cir. 2006).  In other words, the state court's decision either unreasonably extended a rule to a context where it should not have applied, or unreasonably refused to extend a rule to a context where it should have applied.  *Virsnieks*, 521 F.3d at 713.  The inquiry for a federal court on habeas review is not whether the state court's application of the governing law was erroneous or incorrect, but whether it was objectively unreasonable.  *Harding v. Sternes*, 380 F.3d 1034, 1043 (7th Cir. 2004).

The state court's findings of fact are presumed to be correct; however, this presumption can be rebutted if the petitioner presents the court with clear and convincing evidence to the contrary.  28 U.S.C. § 2254(e)(1).

Finally, the AEDPA only applies to federal claims that were adjudicated on their merits in state court.  *Malinowski v. Smith*, 509 F.3d 328, 332–35 (7th Cir. 2007).  To qualify for habeas review under the AEDPA, the petitioner must have presented his or her federal claim through one complete round of review in the state courts, including a petition for discretionary review in

the state supreme court, if available. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Failure

to present the claim to each level of the state court will result in procedural default of the claim.

*Id.* at 848. Furthermore, the federal nature of the claim must be apparent from the facts and

controlling legal principles of the case, such that the state courts have been given "a meaningful

opportunity to pass on the substance of the claims." *Chambers v. McCaughtry*, 264 F.3d 732,

737-38 (7th Cir. 2001). Federal courts will not review a petitioner's claim if the state court

disposed of the claim on independent and adequate state law grounds, regardless of whether the

state court's ruling was substantive or procedural. *Coleman v. Thompson*, 501 U.S. 722, 729

(1991); *Braun v. Powell*, 227 F.3d 908, 912 (7th Cir. 2000). Federal courts will consider

procedurally defaulted claims only if the petitioner establishes cause and prejudice for the

default, or the petitioner demonstrates that failure to review the claim will result in a

fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citing

*Coleman*, 501 U.S. at 750).

<u>ANALYSIS</u>

**1.** *Ex-Parte* **Hearings on Petitions for Material Witness Bonds**

McDonald's first argument is that his constitutional rights to due process and a fair trial

were violated when the trial court conducted *ex-parte* hearings on the petitions for Byes',

Ward's, and Keyes' material witness bonds, as described above. Specifically, McDonald argues

that he was "denied an oppurtunity [sic] to prepare a defense to the evidence and testimony

presented by the State in obtaining the witness bonds," that he was denied an opportunity to

learn the nature of the witnesses' testimony to be presented at trial, and that the trial judge was

prejudiced by "inflamatory [sic] and highly prejudicial evidence" presented by the government

6

without McDonald or his counsel present.[3]  (Petitioner's Memorandum of Law in Support of Issue Raised in Petition for Writ of Habeas Corpus, Dkt. No. 28, ("Petitioner's Mem.") at 5-6.)

The appellate court rejected McDonald's due process claim on appeal.  At the outset, the court recognized that a defendant's right to be present at trial is limited to critical stages of criminal proceedings, where the defendant's presence "would contribute to the fairness of the procedure" or the proceeding "involves a defendant's substantial rights." *People v. McDonald*, 749 N.E.2d 1066, 1070 (Ill. App. Ct. 3d Dist. 2001) (citing *People v. Kubat*, 447 N.E.2d 247, 272 (Ill. 1983) and *People v. Martine*, 478 N.E.2d 262, 266 (Ill. 1985)).  The appellate court went on to note that "a material witness bond hearing would not, under normal circumstances, involve defendant's substantial rights or contribute to the fairness of the outcome of the procedure." *Id.*  However, the appellate court proceeded to analyze McDonald's claim that he had been prejudiced in his right to a bench trial and that McDonald's presence at the hearings would have contributed to the fairness of these proceedings.  After reviewing the record, the appellate court concluded that there was no evidence of prejudice to the trial judge such that McDonald's right to opt for a bench trial was violated.  Although the appellate court found the trial court had erred in proceeding without notice to McDonald or his counsel, it found this error harmless.  The court further rejected McDonald's argument that his presence at the hearings would have contributed to the fairness of the procedure, noting:

> We are unable to determine what defendant could have done or gained at the hearings that would have affected his claim of potential trial court prejudice.  It is difficult to see how defendant's presence at the hearings could have affected the trial

---

[3] To the extent McDonald argues that "[t]he State's withholding of the fact that these hearings were held amounted to a Brady violation," (Petitioner's Mem. at 5), McDonald's argument is procedurally defaulted because it was not presented to the state courts.

judge in any way.  Any information gained by defendant's examination of the witnesses at the hearings would not have been helpful to defendant.

*Id.* at 1071.  The appellate court concluded that there had been no due process violation.

Because McDonald's due process claim was adjudicated on its merits, it is subject to analysis under the AEDPA.  Furthermore, McDonald must also demonstrate that he was prejudiced by any constitutional error that did occur.[4]  *Rushen v. Spain*, 464 U.S. 114, 117 n.2 (1983) (violations of the right to be present at a critical stage of the criminal proceedings are subject to a harmless error standard of review).  As the Supreme Court recently clarified, "an error is harmless "unless it 'had substantial and injurious effect or influence in determining the jury's verdict.'"  *Fry v. Pliler*, 127 S. Ct. 2321, 2328 (2007) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993)).  This court's review on the question of harmless error is independent of the state court's analysis.  *Id.* at 2326-27.

In this case, there is no evidence that the *ex parte* communications between government counsel and the trial judge had any impact whatsoever on the jury's verdict.  McDonald does not argue that the jury in his case was prejudiced or biased because of the trial court's procedural error, or that the material witness bonds were inappropriately issued.  Nor does McDonald set forth any specific information that he could have obtained at the bond hearings for use in preparation of his defense at trial.  Assuming that the *Brecht* standard applies to McDonald's claim, this court finds no evidence that the trial court's error had a "substantial and injurious effect or influence in determining the jury's verdict."  McDonald's petition for habeas relief on

---

[4] Because this court finds that any constitutional error regarding the material witness bonds was harmless, it need not determine whether a constitutional error actually occurred. *Aleman v. Sternes*, 320 F.3d 687, 690-91 (7th Cir. 2003).

this basis is denied.

Alternatively, the court notes that it is not entirely clear that the *Brecht* standard should apply to due process claims like McDonald's. The holding in *Brecht* was originally limited to cases of "trial error," which the Supreme Court defined as "occur[ing] during the presentation of the case to the jury." *Brecht*, 507 U.S. 619, 629 (1993). The *Brecht* Court distinguished "trial error" from "structural defects," such as deprivation of the right to counsel, which "require[ ] automatic reversal of the conviction because they infect the entire trial process." *Id.* at 629-30. McDonald's claim does not readily fit into either one of these categories. While the Supreme Court's recent decision in *Fry* appears to apply the *Brecht* standard to *all* allegations of "constitutional error in a state-court criminal trial," 127 S. Ct. at 2328, the *Fry* Court did not make clear whether, in applying the *Brecht* standard, it also adopted the *Brecht* Court's definition of "trial error." *Fry*, 127 S. Ct. at 2328.

The Seventh Circuit has analyzed habeas cases alleging unconstitutional *ex parte* communications under a harmless error standard slightly different than that articulated in *Brecht*. In *Moore v. Knight*, the reviewing federal court looked at whether the *ex parte* communications at issue "had a prejudicial effect on the defendant and rendered the trial 'fundamentally unfair.'" *Moore v. Knight*, 368 F.3d 936, 940 (7th Cir. 2004) (quoting *Ellsworth v. Levenhagen*, 248 F.3d 634, 640 (7th Cir. 2001)). This analysis may be more appropriate to claims like McDonald's, where the alleged constitutional error did not occur during the presentation of the case to the jury. Therefore, this court proceeds with the *Moore* analysis as an alternative basis for its holding.

On habeas review, the substance of an *ex parte* communication and its prejudicial impact

are findings of fact entitled to a presumption of correctness. *Rushen*, 464 U.S. at 120; *see also* 28 U.S.C. § 2254(e)(1). The state court's determination will only be overturned if the petitioner presents clear and convincing evidence that the state court's findings were unreasonable in light of the evidence presented during the state court proceedings. 28 U.S.C. § 2254(d)(2); *Moffat v. Gilmore,* 113 F.3d 698, 703 (7th Cir. 1997) (petitioner "bear[s] the burden of showing that the allegedly *ex parte* communications were to his prejudice"). On the other hand, if a federal court is "in grave doubt" about whether a trial error of federal law is harmless, the court must grant the petition for habeas relief. *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995).

In this case, the appellate court relied on the petitions and the record of the bond hearings in finding that there was no prejudice to the trial judge. Specifically, the court found (1) "[t]he petitions simply claim that the witnesses feared for their safety and note that the murder of Derrick Gholston is under investigation [but] Defendant is not referenced in either allegation" and (2) "our review of the record of the hearings shows no 'inflammatory' communication concerning either the facts of the case or Derrick Gholston's murder." *People v. McDonald*, 749 N.E.2d at 1070. McDonald argues that the appellate court's finding of lack of prejudice was erroneous. Specifically, McDonald argues that the petitions "implied that [McDonald] or agents on his behalf had threatened the safety of the witnesses . . . and the rest of the prejudice accusations follow." (Answer to Respondants [sic] Reply, Dkt. No. 37, ("Petitioner's Reply") at 1.) In support of his argument, McDonald has attached the petitions for the three material witness bonds.

The petitions for Byes and Ward do state that each witness "fears for his safety having survived this attack and identifying the defendant." (Petitioner's Reply, Exhibits for Issue 1.)

Likewise, the petition for Keyes states that Keyes "fears for his safety having provided information to the police," including "a taped statement in which he recounted statements made to him by Christopher McDonald . . . relat[ing] facts about the shooting of John Gholston [and] implicating himself in the homicide." (*Id.*) The petitions thus clearly "referenced" McDonald in connection with the witnesses' allegations that they feared for their safety, in contrast to the appellate court's finding.

However, reviewing the full text of the petitions, and considering the appellate court's finding that the hearings themselves did not include any "inflammatory" communications, this court cannot say that the appellate court's finding as to a lack of prejudice was objectively unreasonable. The petitions do suggest a connection between the witnesses' identification of McDonald and their fear for their future safety; however, there is no record before this court of any evidence or argument presented to the trial judge to suggest that McDonald (or his agent) was intimidating or threatening any of the three witnesses. The petitions specifically note that Derrick Gholston's homicide "remains under investigation." (Petitioner's Reply; Exhibits for Issue 1.) The petitions do not refer to McDonald as being involved in this investigation in any way. Moreover, the trial court was at no point required to make a determination as to whether the witnesses' fears were reasonable or justified, or to ascertain exactly who they feared would harm them. On this record, the *ex parte* communications to the trial court that the witnesses feared for their safety because they had identified McDonald as the shooter do not create an unacceptable risk of prejudice.

The appellate court's finding was objectively reasonable on the question of prejudice, as was its subsequent conclusion that the trial court's error was harmless. In keeping with Seventh

Circuit precedent, this court alternatively holds that the appellate court's finding of harmless error "is not contrary to the law as articulated by the Supreme Court, as the Supreme Court has consistently held that the government may show that the *ex parte* contact was harmless." *Ellsworth*, 248 F.3d at 641 (citing *Rushen*, 464 U.S. at 120 and *Remmer v. United States*, 347 U.S. 227, 229 (1954)).

## 2.    Bloodhound Evidence

McDonald next argues that his due process and fair trial rights were violated when the government prosecutor improperly elicited testimony about bloodhound evidence at trial for purposes of undermining McDonald's self-defense claim. It is undisputed that, at McDonald's trial:

> Joliet police officer Robert Badertscher testified that his police dog was trained to locate articles or physical evidence with human scents on them. Courtney Ward had led officer Badertscher on the path Ward took when he ran from the shooting scene. Badertscher and other officers searched the area for firearms several times, one time with the dog.
>
> At trial, when asked if he had led his dog on the path that Ward took, the officer responded that he had and began to explain the path that he had taken with the dog. At this point, defendant objected. At a conference held outside the hearing of the jury, defendant moved for a mistrial. The prosecutor argued that if the State could show a search of Ward's path of retreat had been made without finding a gun, the defense of self-defense could be refuted. The trial judge denied the motion for mistrial, but sustained the objection and told the jury that any testimony regarding the canine was inadmissible and should be disregarded.

*People v. McDonald*, 749 N.E.2d 1066, 1071 (Ill. App. Ct. 3d Dist. 2001).

On direct appeal, McDonald argued that the "[t]he bloodhound evidence elicited by the prosecutor was clearly inadmissible and constituted reversible error," that the "trial court committed plain error," and that the "trial judge . . . abuse[d] his discretion" in denying the defendant's motion for a mistrial, because "bloodhound evidence is inadmissible to establish any

factual proposition in a criminal proceeding in Illinois." (Dkt. No. 33, Ex. A at 13; Dkt. No. 33, Ex. C at 8.) In support of this argument, McDonald cited *People v. Cruz*, 643 N.E.2d 636, 662 (Ill. 1994); *People v. Pfanschmidt*, 104 N.E. 804, 823 (Ill. 1914); and *People v. Lefler*, 689 N.E.2d 1209 (Ill. App. Ct. 5th Dist. 1998). McDonald also argued that striking the bloodhound evidence from the record was an insufficient remedy because "the jury had already heard all of the evidence." (Dkt. No. 33, Ex. A at 14.) McDonald repeated these same arguments in his petition for leave to appeal before the Supreme Court of Illinois. (Dkt. No. 33, Ex. E at 5.)

In ruling on the merits of McDonald's claim, the appellate court reviewed the trial court's denial of McDonald's motion for a mistrial under an abuse of discretion standard. The appellate court recognized that, "[i]n Illinois, bloodhound evidence is never admissible to establish any factual proposition in a criminal proceeding." *People v. McDonald*, 749 N.E.2d at 1071 (citing *People v. Cruz*, 643 N.E.2d 636 (Ill. 1994)). However, the court reasoned that erroneously admitted bloodhound evidence is harmless "if properly admitted evidence establishes an element of the crime." *Id.* (citing *People v. Gomez*, 491 N.E.2d 68 (Ill. App. Ct. 1st Dist. 1986)). The court also noted that any error is usually cured "[i]f a trial judge properly sustains a timely objection and instructs the jury to disregard the evidence." *Id.* (citing *People v. Fierer*, 631 N.E.2d 1214 (Ill. App. Ct. 3d Dist. 1994)). The appellate court concluded that the trial court did not abuse its discretion in denying McDonald's motion for a mistrial, finding that the improper bloodhound evidence in McDonald's case was cumulative of other admissible testimony and that the trial court cured any error by sustaining McDonald's objection and instructing the jury to disregard the evidence. *Id.* at 1071-72.

On habeas review, this court finds that McDonald's due process and fair trial claims regarding the admission of bloodhound evidence at trial have been procedurally defaulted. Before a petitioner can raise a federal claim on habeas review, the petitioner must first give the state court a "fair opportunity" to consider the federal nature of the claim. *Harding v. Sternes*, 380 F.3d 1034, 1046 (7th Cir. 2004). This means a petitioner must "articulat[e] the point in such a way that a judge could grasp both its substance and its foundation in federal law." *Lockheart v. Hulick*, 443 F.3d 927, 929 (7th Cir. 2006). "Specifically, '[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.'" *Harding*, 380 F.3d at 1046 (quoting *Duncan v. Henry*, 513 U.S. 364, 366 (1995)).

In his arguments to the state courts, McDonald did not explicitly address any federal constitutional violations that occurred in relation to the admission of the bloodhound evidence, nor did he rely on federal or state cases which apply a constitutional analysis to similar facts. *Lieberman v. Thomas*, 505 F.3d 665, 670 (7th Cir. 2007). Rather, McDonald's briefs and the cases cited therein only discuss the *state* evidentiary rule regarding bloodhound evidence. *See, e.g., Cruz*, 643 N.E.2d at 663 (recognizing that Illinois' evidentiary rule stands in contrast to "a majority of foreign jurisdictions"). Because McDonald only relied upon "state cases which engaged in a non-constitutional analysis based solely on state law principles," the appellate court had no reason to understand that McDonald was invoking his rights under the federal constitution. *Wilson v. Briley*, 243 F.3d 325, 328 (7th Cir. 2001). As a general matter, McDonald's bloodhound evidence claim is not "well within the mainstream of constitutional litigation" and his framing of his claim does not "call to mind a specific constitutional right." *Id.*

14

at 327.  "'Abuse of discretion' and 'improper factors' are not terms that Illinois lawyers and judges, by quirk of local legal idiom, use to articulate constitutional arguments.  To the contrary, abuse-of-discretion arguments are ubiquitous, and most often they have little or nothing to do with constitutional safeguards."  *Id.* at 328 (internal citations omitted).  From the record in this case, it is clear that the state court was not fairly presented with the federal nature of McDonald's claims.  This court is therefore precluded from reviewing the merits of McDonald's bloodhound evidence claim.  *Lieberman*, 505 F.3d at 669.

A procedural default may be excused where the petitioner has demonstrated cause for the default and prejudice therefrom.  *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).  McDonald argues that "[i]f this issue is not preserved for Federal review then the cause is ineffective asst. of counsel."  (Petitioner's Reply at 3.)  However, ineffective assistance of counsel will only be considered cause for excusing a procedural defect if the ineffective assistance of counsel claim was *itself* raised as an independent claim before the state court.  *Edwards*, 529 U.S. at 452-53.  McDonald raises his ineffective assistance of counsel claim for the first time in his reply brief before this court, arguing that counsel should have raised the federal nature of his bloodhound evidence claim before the state court.  This argument should have been presented to the state court in McDonald's first post-conviction petition.  Because McDonald's ineffective assistance of counsel claim was not brought before the state court, it is procedurally defaulted and cannot serve as cause for the default of McDonald's bloodhound evidence claim.

### 3.     Trial Counsel's Failure to Advise McDonald Regarding His Sentence

McDonald next argues that he was denied the effective assistance of counsel when his trial attorney failed to advise McDonald that he would be required to serve 100% of his sentence under the Truth-in-Sentencing Act, *see* 730 Ill. Comp. Stat. 5/3-6-3(a)(2)(I), if convicted of first degree murder and that the sentences for aggravated battery with a firearm would be served consecutive to each other and also consecutive to the murder sentence, *see* 730 Ill. Comp. Stat. 5/5-8-4(a)(i).  McDonald argues that, in light of this omitted information, his counsel's advice to reject a lesser included[5] instruction on second degree murder was both unreasonable and prejudicial.[6]

McDonald initially raised this argument in his first post-conviction petition in state court, which he filed *pro se*.  The trial court summarily rejected McDonald's first post-conviction petition as frivolous and patently without merit.  On appeal, McDonald argued that his case should be remanded for further post-conviction proceedings because his petition "adequately alleged the gist of a claim that, due to the ineffective assistance of trial counsel, defendant was unable to make an intelligent, fully-informed decision whether to request second degree murder

---

[5] In Illinois, "second degree murder is properly characterized as a lesser mitigated offense rather than a lesser-included offense."  *People v. Walton*, 880 N.E.2d 993, 1000 (Ill. App. Ct. 1st Dist. 2007) (citing *People v. Jeffries*, 646 N.E.2d 587 (1995)).  Because this distinction does not affect the court's analysis, the court adopts the terminology used by the parties.

[6] McDonald further argues that the trial court's failure to instruct the jury on second degree murder was a violation of state law, citing *People v. Garcia*, 721 N.E.2d 574 (Ill. 1999). However, in *Garcia* the Supreme Court of Illinois merely reaffirmed that the trial court has the discretion to *sua sponte* instruct the jury on a lesser included offense over the defendant's objection, if the evidence presented at trial supports the instruction.  To the extent McDonald's argument may raise constitutional issues, it is procedurally defaulted because he failed to raise this argument before the state courts.

jury instructions." (Dkt. No. 33, Ex. I at 12.)

In an unpublished decision, the appellate court held that McDonald's allegations could not support a claim for post-conviction relief, because McDonald had failed to allege performance that fell below an objective standard of reasonableness. Citing Illinois case law, the appellate court reasoned that the omitted information related only to "collateral" matters, and that McDonald's attorney therefore had no duty to explain the mandatory and consecutive nature of the potential sentences to McDonald. (Dkt. No. 33, Ex. L at 5.) The appellate court also found that the attorney's advice to forgo the lesser included instruction on second degree murder was "a matter of sound trial strategy." (*Id.*) McDonald raised the same arguments to the Supreme Court of Illinois, which denied McDonald's petition for leave to appeal.

Because McDonald's ineffective assistance of counsel claim was adjudicated on its merits, it falls under the AEDPA and habeas relief can only be granted if the appellate court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

The governing standard for ineffective assistance of counsel claims is set forth by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984). A state court decision can comply with Supreme Court precedent, despite the fact that it does not cite to it directly. *Daniels v. Knight*, 476 F.3d 426, 434 (7th Cir. 2007) (citing *Harrison v. McBride*, 428 F.3d 652, 666 (7th Cir. 2005)). In this case, although the appellate court did not directly cite *Strickland*, it did apply the *Strickland* standard to McDonald's ineffective assistance

of counsel claim. (*See* Dkt. No. 33, Ex. L at 3-4) ("To prevail on a charge of ineffective assistance of counsel, a defendant must establish: (1) that counsel's representation fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, were it not for counsel's deficient representation, the outcome of the proceedings would have been different.") Because the appellate court specifically found that the performance of McDonald's trial counsel was not objectively unreasonable, it did not reach the prejudice prong of the *Strickland* test.

Through *Strickland* and its progeny, the Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct . . . emphasiz[ing] that '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688)). Because the Supreme Court has not specifically addressed the contours of an attorney's duty to advise a defendant in the context of the defendant's decision to accept or reject the tender of a jury instruction on a lesser included offense, McDonald cannot argue that the appellate court's decision was "contrary to" any clearly established federal law. *Conner v. McBride*, 375 F.3d 643, 657 (7th Cir. 2004). The role of this court is therefore limited to analyzing whether the state court unreasonably applied *Strickland* in concluding that trial counsel was not constitutionally ineffective. *Roche v. Davis*, 291 F.3d 473, 481 (7th Cir. 2002).

The appellate court in this case noted "[t]he decision to tender a lesser included offense instruction is analogous to the decision to enter a plea of guilty." (Dkt. No. 33, Ex. L at 4) (citing *People v. Brocksmith*, 642 N.E.2d 1230 (Ill. 1994).) As explained by the Supreme Court of Illinois in *Brocksmith*, "[i]n both instances the decisions directly relate to the potential loss of

18

liberty on an initially uncharged offense." *Brocksmith*, 642 N.E.2d at 1232. The Supreme Court of Illinois more recently expanded on the factors affecting the decision to tender or decline a jury instruction on a lesser included offense:

> [I]f the defendant chooses to submit a lesser-included offense instruction, he is acknowledging, indeed arguing, that the evidence is such that a rational jury could convict him of the lesser-included offense, and he is exposing himself to potential criminal liability, which he otherwise might avoid if neither the trial judge nor the prosecutor seeks the pertinent instruction. If, on the other hand, the defendant chooses to forgo the opportunity to tender a lesser-included offense instruction, the defendant might be passing up "'an important third option to a jury which, believing that the defendant is guilty of something but uncertain whether the charged offense has been proved, might otherwise convict rather than acquit the defendant of the greater offense.'"

*People v. Medina*, 851 N.E.2d 1220, 1226 (2006) (internal citations omitted). Recognizing that "the decision whether to tender a lesser-included offense instruction partakes of, and is unavoidably intertwined with, strategic trial calculations, matters within the sphere of trial counsel," the Supreme Court of Illinois ultimately determined that the trial court need only inquire into counsel's advice regarding "potential penalties associated with a lesser included offense" if the lesser included offense instruction is actually tendered. *Id.* at 1228-29. Where no instruction on a lesser included offense is tendered, a trial court inquiring into the decision not to tender the instruction runs the risk of "improperly intruding on the attorney-client relation and interfering with the defense strategy counsel has pursued." *Id.* The Supreme Court of Illinois thus distinguished between the decision to tender a jury instruction on a lesser included offense (analogous to a guilty plea) and the decision *not* to tender a jury instruction on a lesser included offense (trial strategy).

Like the Supreme Court of Illinois, the ABA Standards for Criminal Justice treat the

decision to plead guilty and the decision to tender a lesser included offense instruction as similar, but different. *See Strickland*, 466 U.S. at 689 ("Prevailing norms of practice as reflected in American Bar Association standards and the like . . . are guides to determining what is reasonable, but they are only guides."). First, the ABA Standards for Criminal Justice treat the decision whether to enter a plea of guilty as defendant's decision to make, whereas the decision to seek a jury instruction on a lesser included offense is viewed as a strategic and tactical decision to be made by defense counsel. *See* ABA Standards for Criminal Justice, Defense Function 4-5.2 (3d ed. 1993) and Commentary, p. 201-02.[7]  The ABA Standards for Criminal Justice further advise, "[t]he decision to plead guilty can be an intelligent one only if the defendant has been advised fully as to his or her rights and as to the probable outcome of alternative choices."  ABA Standards for Criminal Justice, Defense Function 4-5.1, Commentary, p. 198 (3d ed. 1993).  Decisions regarding lesser included offenses, on the other hand, merely require defense counsel "to consult fully with the accused about any lesser included offenses the trial court may be willing to submit to the jury."  ABA Standards for Criminal Justice, Defense Function 4-5.2, Commentary, p. 202 (3d ed. 1993.)

In this case, it is clear that trial counsel conferred with McDonald regarding the general ramifications of declining a jury instruction on second degree murder.  As found by the appellate court:

> During the jury instruction conference, the trial court asked the defendant if he wished to tender a lesser included instruction of second degree murder.  Defense

---

[7] *See also Simeon v. State*, 90 P.3d 181, 194 (Ala. 2004) (noting the change from the earlier version of the Commentary on Standard 4-5.2, which "does indeed suggest that the client should make the decision whether to ask for jury instructions on lesser included offenses").

> counsel stated he had explained second degree murder to the defendant and that the defendant did not want the jury instructed on that offense. The judge informed the defendant that it was the defendant's decision to make. The defendant said he understood and that he did not wish to include the instruction. The judge then instructed the jury on the affirmative theory of self-defense.

(Dkt. No. 33, Ex. L at 2.) As the appellate court correctly recognized, in applying the *Strickland* test, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. The decision to decline a jury instruction on second degree murder falls squarely within the realm of trial strategy. Defendants declining an instruction on a lesser included offense hope to limit the options available to a jury. In this case, the jury was forced to choose between the competing theories of first degree murder and self-defense. McDonald may well have decided it was against his interests to invite a compromise verdict in the form of second degree murder. This court cannot say that the appellate court was objectively unreasonable in concluding that counsel's advice to decline a jury instruction on second degree murder was sound trial strategy.

McDonald admits that "Counsel explained second degree statute," but further argues that relief is warranted because his attorney "failed to explain the 'sister' statute second degree murder sentencing." (Petitioner's Reply at 4.) McDonald argues this failure to inform was based on his attorney's misunderstanding of the law, (*Id.* at 5), and that pursuant to *Moore v. Bryant*, "the deficient performance prong has been met where the inaccurate advice 'resulted from the attorney's failure to undertake a good-faith analysis of all the relevant facts and applicable legal principles.'" (Petitioner's Mem. at 11.) (quoting *Moore v. Bryant*, 348 F.3d 238, 242 (7th Cir. 2003) (quoting *Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000)).) The problem with McDonald's argument is that the cases he relies on each involve attorneys

who actively misinformed their clients as to the length of their potential sentences, rather than merely staying quiet on the subject.[8] *See Moore*, 348 F.3d at 242 ("we are not presented with an attorney's failure to inform a client of an impending legislative change, but rather with misinformation provided by an attorney on an issue that is certainly critical to the plea decision—the length of the sentence that the defendant faces"); *Bridgeman*, 229 F.3d at 592 ("counsel's alleged miscalculation, standing alone, could never suffice to demonstrate deficient performance unless the inaccurate advice resulted from the attorney's failure to undertake a good-faith analysis of all of the relevant facts and applicable legal principles"); *United States v. Day*, 969 F.2d 39, 44 (3d Cir. 1992) ("if Day is correct that he was seriously misled about his sentence exposure when the likelihood of his conviction was overwhelming, he received ineffective assistance of counsel"); *People v. Curry*, 687 N.E.2d 877, 887 (Ill. 1997) ("[C]ounsel failed to provide defendant with the essential information that he faced a mandatory minimum 12-year prison term if convicted of the three counts with which he was charged. Indeed, by informing defendant he would receive close to four-year sentence if convicted of any of the three counts, defense counsel affirmatively misstated the consequences of rejecting the plea offer.").

McDonald does cite to one case in which failure to inform of potential sentencing exposure was itself considered deficient performance. In *Williams v. State*, 605 A.2d 103 (Md. 1992), the Court of Appeals of Maryland found counsel to be ineffective in the context of a plea negotiation. The government had offered a plea agreement that would expose the defendant to a

---

[8] These cases also all arise in the context of a defendant's decision to enter a guilty plea. Because this court has distinguished between a decision to forego a jury instruction on a lesser included offense and a decision to plead guilty, these cases are distinguishable on this ground, as well.

maximum sentence of ten years. In consideration of the plea offer, trial counsel failed to advise his client that he would be subject to a mandatory minimum sentence of 25 years if convicted of his third crime of violence, pursuant to Maryland Code, Art. 27, § 643B. The Court of Appeals of Maryland held this omission to be "deficient conduct." *Id.* at 109.

As discussed above, the question of whether to accept a proposed plea agreement involves different considerations than the decision to tender or decline a jury instruction on a lesser included offense. The defendant in *Williams* had the opportunity to foreclose a potential mandatory minimum sentence in exchange for surrendering any opportunity for an acquittal, thereby limiting the charges on which he would be convicted—but also ensuring that he would be convicted of at least one charge. In that context, the defendant may well have needed to know what he stood to gain by accepting the harsh consequence of a conviction. McDonald, on the other hand, was not faced with the choice of accepting a certain conviction.[9] His choice regarding whether to increase the options presented to the jury was made in a context in which acquittal was always an available alternative.

In this case, where McDonald does not allege that his attorney actively misinformed him regarding the length of his potential sentence, the appellate court was not objectively unreasonable in holding counsel's performance to be constitutionally adequate in regards to the decision to decline a jury instruction on second degree murder. Because this court finds the

---

[9] Although McDonald suggests numerous times that he "would have opted to plead guilty and receive a lesser sentence" had he known of the mandatory and consecutive nature of his potential sentences, (*see, e.g.,* Petitioner's Mem. at 11), McDonald does not allege that his counsel's advice was ineffective in relation to any specific proposed plea agreement or plea terms. *See Williams*, 605 A.2d at 109 ("It is the existence of a plea agreement with more favorable terms than those required by imposition of a mandatory sentence that renders the omission potentially prejudicial.").

appellate court did not unreasonably apply the performance prong of *Strickland*, there is no need to further address the question of prejudice.

4.      **State Trial Court's Summary Dismissal of McDonald's First Post-Conviction Petition, Appellate Court's Subsequent Affirmation of the Dismissal, and Supreme Court of Illinois' Denial of Petition for Leave to Appeal**

McDonald next argues that his due process and equal protection rights were violated when the trial court dismissed his first petition for post-conviction relief as "frivolous or patently without merit," despite the fact that McDonald had adequately alleged the "gist" of a constitutional claim regarding his attorney's failure to advise him of his sentencing exposure in relation to his decision to deny the tender of a jury instruction on second degree murder. McDonald also argues that he was denied equal protection of the law when the trial court only granted him a three-week extension of time to file his post-conviction petition due to his retained attorney's failure to follow McDonald's instructions, rather than the statutory maximum under Illinois law.  *See* 725 Ill. Comp. Stat. 5/122-1.  Finally, McDonald argues that his due process rights were further violated when the trial court's dismissal was affirmed on appeal and the Supreme Court of Illinois subsequently denied McDonald's petition for leave to appeal.

This claim as a whole is procedurally defaulted because McDonald did not raise it before the state courts.  McDonald argues that he did raise his claim on direct appeal of the denial of his first post-conviction petition, but the record shows otherwise.  On appeal, McDonald clearly stated "[t]he only issue raised on appeal argues that the circuit court erred by summarily dismissing defendant's *pro se* post-conviction petition as frivolous."  (Dkt. No. 33, Ex. I at 4.) Specifically, McDonald alleged that the trial court erroneously applied the procedures of the Illinois Post-Conviction Hearing Act, 725 Ill. Comp. Stat. 5/122-1, *et seq.* (West 2002), in not

recognizing the gist of a meritorious constitutional claim. (*Id.* at 12.) McDonald did not make any argument that the procedures followed in the trial court were an unconstitutional deprivation of his due process rights. (Dkt. No. 33, Ex. I at 4.)

McDonald argues that he had cause for not raising his due process claim in his second post-conviction petition because he had already raised the issue once before the state court, and was barred by the principles of *res judicata* from raising it again. However, because McDonald did not raise the constitutional nature of his claim on appeal of his first post-conviction petition, this argument is erroneous. McDonald's failure to articulate his federal claim before the state court through either direct appeal of the denial of his first post-conviction petition or as an independent claim in his second post-conviction resulted in the state court being denied a meaningful opportunity to address McDonald's claim. It is therefore procedurally defaulted and will not be entertained by this court.

**5.** **Leg Shackles**

McDonald's last argument is that his Fifth, Sixth, and Fourteenth Amendment rights were violated when: his legs were shackled during trial without an individualized finding by the court that shackles were warranted; McDonald was forced to testify before the jury while wearing leg shackles; and McDonald's attorney failed to object to the shackles, thereby failing to preserve the issue for later review.

McDonald raised each aspect of his shackles claims to the trial court in both his second post-conviction petition and his amended second post-conviction petition. The trial court dismissed both petitions summarily as frivolous and without merit. McDonald appealed the dismissals, and the appellate court held in a published opinion that McDonald had waived his

shackles claims by not presenting them in his first post-conviction petition. *People v. McDonald*, 846 N.E.2d 960, 964-65 (Ill. App. Ct. 3d Dist. 2006). The appellate court further rejected McDonald's argument that he had cause for his failure to raise the claim in his first post-conviction petition because he did not then know the legal basis for his claim, finding that the recent cases relied on by McDonald "do not involve novel legal analysis" and "the use of shackles on a defendant during trial is an issue that has been raised in previous cases." *Id*. at 965. The Supreme Court of Illinois denied McDonald's petition for leave to appeal this decision.

Because the Appellate Court of Illinois did not reach the merits of McDonald's shackles claims, ruling instead on the independent and adequate state ground of waiver, this court is barred from reviewing them. *See Szabo v. Walls*, 313 F.3d 392, 395 (7th Cir. 2002) ("Failure to comply with the state's procedural rules furnishes an independent and adequate state ground of decision that blocks federal collateral review."). This court may nevertheless review McDonald's shackles claims if he can establish cause and prejudice for the default, or if failure to consider the claims would result in a fundamental miscarriage of justice. *Johnson v. Loftus*, 518 F.3d 453, 455-56 (7th Cir. 2008); *Miranda v. Leibach*, 394 F.3d 984, 992 (7th Cir. 2005).

McDonald argues that cause exists for his failure to raise the shackles claims in his first post-conviction petition, because he did not know at that time that his rights had been violated. Specifically, McDonald argues, "[w]here the trial judge fails to act, and where the prosecutor and trial defense counsel, who also are presumed to be familiar with courtroom procedures, fail to object and remind the judge of his duty to act, it is both unrealistic and unfair to fault the defendant for not knowing the law set forth in cases such as [*People v. Boose*, 362 N.E.2d 303

(Ill. 1977), *In re Staley*, 364 N.E.2d 72 (Ill. 1977), and *Illinois v. Allen*, 397 U.S. 337 (1970)]."
(Petitioner's Mem. at 26.)

As a general matter, cause for procedural default exists where "some objective factor external to the defense impeded [defendant's] efforts to comply with the State's procedural rule." *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007) (quoting *McCleskey v. Zant*, 499 U.S. 467, 493 (1991)).  Cause may be premised upon "a showing that the factual or legal basis for a claim was not reasonably available" at the time the first post-conviction petition was filed.  *Id.* However, "a petitioner's 'failure to act or think like a lawyer cannot be cause for failing to assert a claim.'" *Barksdale v. Lane*, 957 F.2d 379, 385 (7th Cir. 1992) (quoting *Henderson v. Cohn*, 919 F.2d 1270, 1272 (7th Cir. 1990)).  In this case, McDonald does not argue that his claim was "so novel at the time of the first petition that no reasonable litigant would think to argue it." *Haley v. United States*, 78 F.3d 282, 284 (7th Cir. 1996).  In fact, McDonald recognizes that "[f]or more than a quarter century, courts have condemned shackling or handcuffing defendants during trial absent a compelling need."  (Petitioner's Mem. at 25.)  The fact that the trial judge and defense counsel did not notify McDonald of his due process rights in this regard does not mean the legal basis for his claim was "not reasonably available" when McDonald filed his first post-conviction petition.  McDonald's ignorance of the law is not an external factor that impeded his ability to raise the shackles claims in a timely manner.  *Haley*, 78 F.3d at 285.

McDonald also argues cause in that his trial counsel was ineffective for failing to preserve the issue in the record,[10] and that without such a record "no pro se petitioner or legal

---

[10] To the extent McDonald has argued a separate ineffective assistance of counsel claim regarding his trial counsel's failure to object to the shackles at trial, this court finds that the appellate court deemed any such claim to have been waived along with the other claims in

champion would of never [sic] known that defendant's rights were infringed upon," thus impeding McDonald's ability to raise this issue in his first post-conviction petition. (Petitioner's Mem. at 26-27; *see also* Petitioner's Reply at 7.) The problem with this argument is that McDonald himself presumably knew he was shackled at trial. Because McDonald was aware of the factual basis for his claims, the undeveloped state of the record did not impede McDonald from raising his claims in his first post-conviction petition. Any failure on the part of counsel to preserve the shackles claims in the record did not impede McDonald's ability to raise the issue in his first post-conviction petition.

Because McDonald has not established cause for his procedural default, his shackles claims cannot be heard by this court. The court further notes that McDonald has not invoked the fundamental miscarriage of justice exception, which permits a habeas court to review a procedurally defaulted claim in cases where "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Bintz v. Bertrand*, 403 F.3d 859, 863 (7th Cir. 2005) (quoting *Moore v. Casperson*, 345 F.3d 474, 484 (7th Cir. 2003)).

---

McDonald's second post-conviction petition. *People v. McDonald*, 846 N.E.2d at 962 (recognizing that McDonald's claims included allegations "that his trial counsel failed to object to the shackling"). McDonald does not treat the ineffective assistance of counsel claim separately in arguing that he had cause for this procedural default. Because the court finds no cause to excuse McDonald's procedural default on any of the claims alleged in his second post-conviction petition, the question of whether McDonald *also* defaulted his ineffective assistance of counsel claim by not presenting it to the Supreme Court of Illinois is moot.

## CONCLUSION

For the reasons stated above, McDonald's petition for a writ of habeas corpus is denied.

ENTER:

_James F. Holderman_
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date:   May 16, 2008